Richard Smith, WSBA # 21788
Meredith Crafton, WSBA # 46558
Katherine Brennan, WSBA #51247
SMITH & LOWNEY, PLLC
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PUGET SOUNDKEEPER ALLIANCE,                )
                                           )
            Plaintiff,                     )          COMPLAINT
                        v.                 )
                                           )
PACIFIC COAST COAL COMPANY,                )
                                           )
            Defendant.                     )
                                           )
_____        )

## I.      INTRODUCTION

1.      This action is a citizen suit brought under Section 505 of the Clean Water Act

("CWA") as amended, 33 U.S.C. § 1365.  Plaintiff Puget Soundkeeper Alliance

("Soundkeeper"), seeks a declaratory judgment, injunctive relief, the imposition of civil

penalties, and the award of costs, including attorneys' and expert witness fees, for Defendant

Pacific Coast Coal Company's ("PCCC") violations of "effluent standards or limitations" under

33 U.S.C. § 1365(a)(1) and (f)(1) (unpermitted discharge in violation of the 33 U.S.C. § 1311(a)

prohibition) or, in the alternative, (f)(7) (violation of a National Pollutant Discharge Elimination

System ("NPDES") permit or conditions thereof).

COMPLAINT - 1

## II.     JURISDICTION AND VENUE

2.      The Court has subject matter jurisdiction under Section 505(a) of the CWA, 33 U.S.C. § 1365(a).  The relief requested herein is authorized by 33 U.S.C. §§ 1319(d) and 1365(a).

3.      In accordance with Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), Soundkeeper notified PCCC of PCCC's violations of the CWA and of Soundkeeper's intent to sue under the CWA by letter dated December 17, 2019 and postmarked December 17, 2019 ("Notice Letter").  A copy of the Notice Letter is attached to this complaint as Exhibit 1.  The allegations in the Notice Letter are incorporated herein by this reference.  In accordance with 33 U.S.C. § 1365(b)(1)(A) and 40 C.F.R. § 135.2(a)(1), Soundkeeper provided copies of the Notice Letter to Defendant's Registered Agent, the Administrator of the United States Environmental Protection Agency ("USEPA"), the Administrator of USEPA Region 10, and the Director of the Washington Department of Ecology ("WDOE") by mailing copies to these individuals on December 17, 2019.

4.      More than sixty (60) days have passed since the Notice Letter and copies thereof were issued in the manner described in the preceding paragraph.

5.      The violations complained of in the Notice Letter are continuing or are reasonably likely to re-occur.  PCCC is in violation of the CWA.

6.      Neither the USEPA nor the WDOE has commenced any action constituting diligent prosecution to redress these violations.

7.      The source of the violations complained of is in King County, Washington, within the Western District of Washington, and venue is therefore appropriate in the Western District of Washington under Section 505(c)(1) of the CWA, 33 U.S.C. § 1365(c)(1).

COMPLAINT - 2

### III.   PARTIES

8.     Plaintiff, Puget Soundkeeper Alliance, is suing on behalf of itself and its member(s).  Soundkeeper is a non-profit corporation organized under the laws of the State of Washington.  Soundkeeper is a membership organization and has at least one member who is injured by PCCC's violations.  Soundkeeper is dedicated to protecting and preserving the Puget Sound by tracking down and stopping the discharge of toxic pollutants into its waters.

9.     Plaintiff has representational standing to bring this action.  Soundkeeper's members are reasonably concerned about the effects of discharges of pollutants, including stormwater and mine dewatering water from PCCC's facility, on aquatic species and wildlife that Soundkeeper's members observe, study, and enjoy.  Soundkeeper's members are further concerned about the effects of discharges from PCCC's facility on human health.  In addition, discharges from PCCC's facility lessen Soundkeeper's members' aesthetic enjoyment of nearby areas.  Soundkeeper has members who live, work, fish, and recreate in and on Lake Sawyer and Lake 12 as well as the Green River, the Duwamish River and Elliott Bay, all of which are affected by PCCC's discharges.  Soundkeeper members' concerns about the effects of PCCC's discharges are aggravated by PCCC's failure to record and timely report information about its discharges and pollution controls.  The recreational, scientific, economic, aesthetic, cultural, spiritual, and/or health interests of Soundkeeper and its members have been, are being, and will be adversely affected by PCCC's violations of the CWA.  The relief sought in this lawsuit can redress the injuries to these interests.

10.     Soundkeeper has organizational standing to bring this action.  Soundkeeper has been actively engaged in a variety of educational and advocacy efforts to improve water quality and to address sources of water quality degradation in the waters of western Washington, including Lake Sawyer, Lake 22, the Green River, the Duwamish River, Elliott Bay and of

COMPLAINT - 3

course, Puget Sound.  PCCC has failed to fulfill monitoring, recordkeeping, reporting and planning requirements, among others, necessary for compliance with its NPDES individual permit and the CWA.  As a result, Soundkeeper is deprived of information necessary to properly serve its members by providing information and taking appropriate action to advance its mission. Soundkeeper's efforts to educate and advocate for greater environmental protection, and to ensure the success of environmental restoration projects implemented for the benefit of its members are also precluded.  Finally, Soundkeeper and the public are deprived of information that influences members of the public to become members of Soundkeeper, thereby reducing Soundkeeper's membership numbers.  Thus, Soundkeeper's organizational interests have been adversely affected by PCCC's violations.  These injuries are fairly traceable to PCCC's violations and are redressable by the Court.

11.     PCCC is a corporation authorized to conduct business under the laws of the State of Washington and is incorporated under the laws of the State of Washington.

12.     PCCC owns and operates John Henry Mine. John Henry Mine is a coal mine located at or about 30700 Black Diamond-Ravensdale Road, Black Diamond, Washington 98010 and contiguous and/or adjacent properties (the "mine").

### IV.     LEGAL BACKGROUND

13.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of pollutants by any person, unless in compliance with the provisions of the CWA.  Section 301(a) prohibits, inter alia, such discharges not authorized by, or in violation of, the terms of a NPDES individual permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

14.     The State of Washington has established a federally approved state NPDES program administered by the WDOE.  Wash. Rev. Code § 90.48.260; Wash. Admin. Code ch.

COMPLAINT - 4

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

173-220.  This program was approved by the Administrator of the USEPA pursuant to 33 U.S.C. § 1342(b).

15.    The WDOE issued PCCC an NPDES individual permit (WA0030830) under Section 402(a) of the CWA, 33 U.S.C. § 1342(a), most recently on January 11, 2008, effective March 1, 2008, modified December 28, 2012 (the "Permit"), expired January 11, 2013.  The Permit authorized PCCC to discharge stormwater and mine dewatering water, pollutants under the CWA, and other pollutants contained in the stormwater and mine dewatering water to the waters of the State subject to certain terms and conditions.

16.    Permits issued under Section 402 of the CWA must be issued for fixed terms not exceeding five years. 33 U.S.C. § 1342(b)(1)(B).

17.    Under the Administrative Procedure Act (APA), USEPA's regulations, and Washington State regulations, the conditions of an unexpired permit continue until the effective date of a new permit only if the permittee timely submits an application for a new permit. 5 U.S.C. § 558(c); 40 C.F.R. § 122.6; WAC § 173-220-180.

18.    WDOE cannot extend the effectiveness of NPDES permits except in compliance with regulatory and permit requirements for a timely and complete application for renewal. PCCC did not submit to WDOE a timely or complete application for renewal WDOE in 2012.

19.    WDOE has not issued PCCC a valid NPDES Permit since the Permit expired in 2013.

20.    In the event that PCCC's NPDES permit was validly extended in 2013, PCCC failed to submit "timely and sufficient application" for renewal prior to January 11, 2018.

21.    In such event, WDOE has not issued PCCC a valid NPDES Permit since the Permit expired in 2018.

COMPLAINT - 5

22.     PCCC has been discharging pollutants from point sources at the facility without a permit in violation of Section 301(a) of the CWA every day since January 11, 2013 or 2018 in the alternate. *See* 33 U.S.C. § 1311(a).

23.     If this court finds that PCCC's NPDES Permit (WA0030830) was or remains in effect to authorize PCCC's discharges, Soundkeeper alleges in the alternative that PCCC has violated and continues to violate conditions of the Permit.

24.     The Permit imposed certain terms and conditions on PCCC thereby, including monitoring and sampling of discharges, reporting and recordkeeping requirements, as well as restrictions on the quality of stormwater and mine dewatering discharges.  To reduce and eliminate pollutant concentrations in stormwater and mine dewatering discharges, the Permit required, among other things, that permittees develop and implement best management practices ("BMPs") and a Stormwater Pollution Prevention Plan ("SWPPP"), and apply all known and reasonable methods of prevention, control, and treatment ("AKART") to discharges.  The specific terms and conditions of the Permit are described in detail in the Notice Letter and incorporated herein by reference.  See Exhibit 1.

## V.     FACTS

25.     PCCC filed applications with the WDOE for coverage under the Permit.  WDOE granted PCCC coverage under the Permit, effective March 8, 2008, under Permit Number WA0030830.

26.     PCCC is not actively mining, but has repeatedly expressed its intent to resume coal extraction.  PCCC is currently performing reclamation activities such as road construction, constructing new spillways, moving around excavated piles of dirt and placing fill.

COMPLAINT - 6

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

27.     PCCC discharges pollutants, including industrial stormwater runoff from spoil piles, roads and storage areas as well as pollutants contained in mine dewatering water, from point sources identified by PCCC as Outfalls B, F, G, H1, H2, and I.

28.     On a daily basis from five years and sixty days ago through the present, PCCC discharges stormwater and mine dewatering water and other pollutants to Ginder Lake, Mud Lake Creek, and a tributary to Lake 12.  Ginder Lake flows into Mud Lake, which flows into Rock Creek, a Lake Sawyer tributary.  Lake Sawyer then drains to Covington Creek and Big Soos Creek, both tributaries to the Green River, which flows to the Duwamish River, then empties into Puget Sound at Elliott Bay in Seattle. All of these are waters of the United States under the CWA. These discharges continue.

29.     PCCC's mine is approximately 500 acres.  PCCC's mine has a series of conveyance pipes, culverts, and draining ponds and has at least four reported outfalls to waters of the United States.

30.     PCCC's permit expired on January 11, 2013.  PCCC did not submit a complete and timely application for renewal.  Therefore, the permit was not extended by operation of 40 C.F.R. § 122.6 or WAC § 173-220-180(5).

31.     In the event that PCCC's NPDES permit was validly extended in 2013, PCCC again failed to submit "timely and sufficient application" for renewal prior to January 11, 2018.

32.     In letters dated December 18, 2012 and May 16, 2018, WDOE asserts that PCCC's permit continues in effect beyond its expiration date. WDOE has no authority to so extend the Permit in a manner inconsistent with of 40 C.F.R. § 122.6 and WAC § 173-220-180, and its asserted extension of the Permit is invalid as a matter of law.

COMPLAINT - 7

33.     PCCC is discharging stormwater and mine dewatering water as well as other pollutants including as: chromium, copper, zinc, lead, iron, lead, manganese, arsenic, dissolved oxygen, oil sheen, pH, total phosphorus, and turbidity without an NPDES permit.

34.     The allegation that PCCC has been and continues to discharge stormwater and other pollutants without a valid permit is set forth in Section I of the Notice Letter attached hereto as Exhibit 1 and is incorporated herein by this reference.  These violations will continue until PCCC obtains and comes into compliance with an NPDES permit authorizing such discharges, or until all point source discharges of pollutants are permanently eliminated without chance of recurrence.

35.     If PCCC's permit is found to be continuing in effect, PCCC has violated and continues to violate "effluent standards or limitations," as defined by 33 U.S.C. §1365(f), including conditions of the NPDES permit found at Sections 301(a) and 402 of the CWA, 33 U.S.C. §§ 1311(a) and 1342.  PCCC's violations of the Permit and the CWA are set forth in Section II of the Notice Letter attached hereto as Exhibit 1 and are incorporated herein by this reference.

36.     In particular and among the other violations described in the Notice Letter, PCCC has violated the Permit by contributing to violations of water quality standards, failing to implement AKART, failing to adequately update and implement a sufficient SWPPP, failing to implement BMPs to control stormwater and mine dewatering water quality, and failing to timely submit complete and accurate reports.

37.     Condition S1 of the Permit establishes numeric effluent limitations on PCCC's discharges to ensure discharge concentrations meet required standards.  PCCC has discharged stormwater containing levels of pollutants that exceed the effluent limitations established by the Permit, including on the days on which PCCC collected samples with the results identified in

COMPLAINT - 8

Table 1 below, and is likely to continue discharging comparably unacceptable stormwater and

mine dewatering water effluent.

**Table 1 – Effluent Limit Violations**

| Month and year in which sample was collected | Outfall | Daily maximum phosphorus concentration (effluent limit 82 μg/L) | Six-month average phosphorus concentration (effluent limit 41 μg/L) | Daily maximum copper concentration (effluent limit 14.5 μg/L) |
|---|---|---|---|---|
| October 2014 | I | | 47 | |
| December 2016 | B | | | 26 |
| October 2018 | FG | | | 23 |
| October 2018 | HI | | | 15 |
| November 2018 | FG | | | 17 |
| December 2019 | FG | 87 | | |

38.     The stormwater monitoring data provided in Table 1 shows effluent limit

violations included in the stormwater monitoring results that PCCC has submitted to WDOE.

39.     PCCC's stormwater discharges violate the Permit and are causing or contributing

to violations of water quality standards.  Discharges from PCCC's facility contribute to the

polluted conditions of the waters of the State, especially the water quality standards of Lake

Sawyer.  Discharges from PCCC's facility contribute to the ecological impacts that result from

the pollution of these waters and to Soundkeeper and its members' injuries resulting therefrom.

Statutory and Permit requirements and PCCC's violations thereof are described in detail in

Section II of the Notice Letter, attached hereto as Exhibit 1, and are incorporated herein by this

reference.

40.     Condition S14 of the Permit required PCCC to develop and implement a

Stormwater Pollution Prevention Plan ("SWPPP") as specified.  Condition S14.A.1 of the Permit

specifies that the SWPPP must indicate the best management practices ("BMPs") necessary to

provide all known and reasonable methods of prevention, control, and treatment ("AKART") and

ensure that discharges do not cause or contribute to violations of water quality standards.  PCCC

COMPLAINT - 9

not only failed to prepare and implement a SWPPP that specified AKART but has also failed to ensure discharges do not cause or contribute to violations of water quality standards.  These violations of Permit Condition S14 and S14.A.1 are ongoing due to the ongoing requirement to implement AKART.

41.     Examples of PCCC's failure to select and implement BMPs to satisfy AKART are listed in Section II.B. of the Notice Letter, attached hereto as Exhibit 1, and incorporated by reference.

42.     PCCC's failure to select and implement BMPs to satisfy AKART include:

- Poor housekeeping and improper storage of noncoal waste;

- Improper storage of oil containers including a possible leak in storage areas;

- Not repairing the berm around the containment area;

- Failure to clean up the oil/fuel storage area;

- Failure to collect all metallic waste and dispose of it properly;

- Failure to designate an area for staging and repair of equipment resulting in a puddle of greasy lubricant oil;

- Lack of signage at each point of access from public roads that include the names, business address, telephone number, and Office of Surface Mining Reclamation and Enforcement (OSMRE) permit number as required by 30 C.F.R. § 816.11(c));

- Lack of perimeter markers as required by 30 C.F.R. 816.11(d);

- Failure to clear the diversion ditch on the north side of Spoilpile 3 South and the clear water diversion ditch adjacent to SE Green River Gorge Rd as required by 30 C.F.R. § 816.43(a)(2);

COMPLAINT - 10

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

- Failure to maintain Pond H2 including failure to clean up fallen trees and trees growing out of its embankment;

- Failure to repair potholes on roads, including the primary entrance road, road to Pit 1, road to Pit 2, and other areas; and

- Failure to upgrade a wheel wash to meet BMP C106 resulting in oily runoff discharging into a "Clean Water Diversion Ditch".

43.     These violations constitute a failure to implement BMPs to satisfy AKART, in violation of Permit Condition S14. and S14.A.1, which are ongoing.

44.     Condition S14.A.4 requires PCCC to update the SWPPP whenever there is a change in design, construction, operation, or maintenance, which causes the SWPPP to be less effective in controlling the pollutants.  PCCC has not prepared and implemented a SWPPP that specifies changes the Facility, including, but not limited to the addition of new outfalls and changes in activities onsite including reclamation.

45.     Violations of Permit Condition S14.A.4 are ongoing until PCCC implements a sufficient SWPPP.

46.     Condition S14.A.6 of the Permit requires that BMPs in PCCC's SWPPP be consistent with the Stormwater Management Manual for Western Washington ("SWMMWW"). PCCC has not prepared and implemented a SWPPP that includes the technical bases for all stormwater BMPs or assessed how the selected BMPs will satisfy AKART.

47.     Condition S1 of the Permit sets forth numeric effluent limitations which include monthly averages and daily maximums for specific parameters.  Condition S3.C of the Permit requires that for each measurement or sample taken, PCCC shall record the following information: (1) the date, exact place, method, and time of sampling or measurement; (2) the individual who performed the sampling or measurement; (3) the dates the analyses were

COMPLAINT - 11

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

performed; (4) the individual who performed the analyses; (5) the analytical techniques or methods used; and (6) the results of all analyses.

48.     PCCC violated these Conditions when they failed to properly record the minimum, maximum, *and* average values on their DMRs for monitoring points B, FG, H1, H2, and I during May 2015, June 2015, July 2015, August 2015, September 2015, April 2016, May 2016, June 2016, July 2016, August 2016, September 2016, June 2017, July 2017, August 2017, September 2017, October 2017, May 2018, June 2018, July 2018, August 2018, September 2018, May 2019, June 2019, July 2019, August 2019, and September 2019.  These violations continue to occur every time that PCCC fails to record this information.

49.     Each of PCCC's violations of the Permit and the CWA are ongoing in that they are currently continuing or are likely to reoccur at least intermittently in the future.

50.     A significant penalty should be imposed against PCCC under the penalty factors set forth in 33 U.S.C. § 1319(d).

51.     PCCC's violations were avoidable had PCCC been diligent in abiding permit requirements, deadlines, and in overseeing facility operations and maintenance.

52.     PCCC benefited economically because of its violations and failure to implement improvements at the facility.

53.     PCCC's violations caused and contributed to pollution in the receiving water, which may be ameliorated by an order from the Court requiring clean up or monitoring.

## VI.     CAUSES OF ACTION

54.     The preceding paragraphs and the allegations in sections I through III of the Notice Letter, attached hereto as <u>Exhibit 1</u>, are incorporated herein.

COMPLAINT - 12

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

55.     PCCC has violated and continues to violate "effluent standards or limitations" under 33 U.S.C. § 1365(a)(1) and (f)(1) by discharging pollutants from point sources at the facility without a permit in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

56.     In the alternative, PCCC's violations of the Permit described herein and in the Notice Letter constitute violations of Sections 301 and 402 of the CWA, 33 U.S.C. §§ 1311 and 1342, and violations of "effluent standard(s) or limitation(s)" as defined by Section 505 of the CWA, 33 U.S.C. § 1365.

57.     The violations committed by PCCC are ongoing, in that they are presently continuing or are reasonably likely to reoccur at least intermittently.  Any and all additional violations of the Permit and the CWA which occur after those described in Soundkeeper's Notice Letter but before a final decision in this action should be considered continuing violations subject to this Complaint.

58.     Without the imposition of appropriate civil penalties and the issuance of an injunction, PCCC is likely to continue to violate the Permits and the CWA to the further injury of Soundkeeper, its members, and others.

59.     A copy of this Complaint will be served upon the Attorney General of the United States and the Administrator of the USEPA as required by 33 U.S.C. § 1365(c)(3).

## VII.     RELIEF REQUESTED

Wherefore, Soundkeeper respectfully requests that this Court grant the following relief:

A.     Issue a declaratory judgment that PCCC has been discharging pollutants from point sources at the facility without a permit in violation of Section 301(a) of the CWA, 33 U.S.C. § 1311(a), since January 11, 2013;

B.     Require PCCC to seek a valid, updated NPDES Permit;

COMPLAINT - 13

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

1    C.    Enjoin PCCC from operating the facility in a manner that results in further

2    violations of the Permits or the CWA;

3    D.    Order PCCC to immediately implement a SWPPP that is in compliance with the

4    Permit;

5    E.    Order PCCC to provide Soundkeeper, for a period beginning on the date of the

6    Court's Order and running for five years after PCCC achieves compliance with all of the

7    conditions of the Permit, with copies of all reports and other documents which PCCC submits to

8    the USEPA or to the WDOE regarding PCCC coverage under the Permit at the time those

9    documents are submitted to these agencies;

10   F.    Order PCCC to take specific actions to remediate the environmental harm caused

11   by its violations;

12   G.    Grant such other preliminary and/or permanent injunctive relief as Soundkeeper

13   may from time to time request during the pendency of this case;

14   H.    Order PCCC to pay civil penalties of $37,500.00 per day of violation for each

15   violation committed by PCCC through November 2, 2015 and to pay $55,800 per day of

16   violation for each violation committed by PCCC after November 2, 2015 pursuant to Sections

17   309(d) and 505(a) of the CWA, 33 U.S.C. §§ 1319(d) and 1365(a), and 40 C.F.R. § 19 and 19.4;

18   I.    Award Soundkeeper its litigation expenses, including reasonable attorneys' and

19   expert witness fees, as authorized by Section 505(d) of the CWA, 33 U.S.C. § 1365(d); and

20   J.    Award such other relief as this Court deems appropriate.

21   RESPECTFULLY SUBMITTED this 26th day of February, 2020.

22
                      Smith & Lowney, pllc
23

24              By: s/Richard Smith
                    Richard Smith, WSBA # 21788

COMPLAINT - 14

1

      By: s/Meredith Crafton
        Meredith Crafton, WSBA # 46558

2

      By: s/Katherine Brennan
        Katherine Brennan, WSBA # 51247

3

        2317 E. John Street, Seattle, WA 98112
        Tel: (206) 860-2883; Fax: (206) 860-4187

4

        Email: richard@smithandlowney.com,
        meredith@smithandlowney.com,

5

        katherine@smithandlowney.com

6

        *Attorneys for Plaintiff Puget Soundkeeper Alliance*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

COMPLAINT - 15

Smith & Lowney, p.l.l.c.
2317 East John Street
Seattle, Washington 98112
(206) 860-2883

# EXHIBIT 1

## SMITH & LOWNEY, P.L.L.C.
### 2317 EAST JOHN STREET
### SEATTLE, WASHINGTON 98112
### (206) 860-2883, FAX (206) 860-4187

December 17, 2019

**Via Certified Mail - Return Receipt Requested**

David Morris, General Manager
Pacific Coast Coal Company
PO Box 450
30700 Black Diamond-Ravensdale Rd.
Black Diamond, WA 98010

Pacific Coast Coal Company
31615 3rd Ave
Black Diamond, WA 98010

Re:     **NOTICE OF INTENT TO SUE UNDER THE CLEAN WATER ACT**

Dear Managing Agent:

We represent Puget Soundkeeper Alliance ("Soundkeeper"), 130 Nickerson St. #107, Seattle, WA 98109, (206) 297-7002.  Any response or correspondence related to this matter should be directed to us at the letterhead address.  This letter is to provide Pacific Coast Coal Company ("PCCC") with 60 days' notice of Soundkeeper's intent to file a citizen suit against PCCC under Section 505 of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, for the violations of effluent standards and limitations described below.  These violations continue to occur at the John Henry Mine, an approximately 500-acre coal mine located or about 30700 Black Diamond-Ravensdale Road, Black Diamond, WA 98010, which discharges pollutants from at least four point sources to waters of the United States including Ginder Creek, Mud Lake Creek, Rock Creek, Lake 12 and Lake Sawyer. Lake Sawyer then drains to Covington Creek and Big Soos Creek, both tributaries to the Green River, which flows to the Duwamish River, then empties into Puget Sound at Elliott Bay in Seattle.

Soundkeeper asserts violations of "effluent standards or limitations" under 33 U.S.C. § 1365(a)(1) and (f)(1) (unpermitted discharge in violation of the 33 U.S.C. § 1311(a) prohibition) or, in the alternative, (f)(7) (violation of a National Pollutant Discharge Elimination System ("NPDES") permit or conditions thereof).  The most recent NPDES permit issued to PCCC for discharges from the John Henry Mine, NPDES Permit No. WA0030830 ("the Permit"), on January 11, 2008. The Permit was then modified on December 28, 2012 but expired by its own terms on January 11, 2013. Since that date, each and every discharge of pollutants from point sources at the facility has been without authorization in violation of 33 U.S.C. § 1311(a).  In the alternative, if the Permit is found to be continuing in effect, PCCC has violated and continues to violate conditions of the Permit as described below.  All alleged violations are continuing or likely to re-occur.

## I.     UNPERMITTED DISCHARGES

The CWA, 33 U.S.C. §§ 1311 and 1342, prohibits the discharge of pollutants from point sources to waters of the United States, except as authorized by an NPDES permit. PCCC has violated and continues to violate Section 301(a) of the CWA, 33 U.S.C. § 1311(a), by discharging pollutants from its Black Diamond facility, an approximately 500-acre coal mine commonly referred to as the John Henry Mine 01, located at or about 30700 Black Diamond-Ravensdale Road, Black Diamond, WA 98010 (the "facility" or "site"), to waters of the United States without a valid NPDES permit. The facility subject to this notice includes any contiguous or adjacent properties owned or operated by PCCC.

PCCC discharges pollutants, including industrial stormwater runoff from spoil piles, roads and storage areas as well as pollutants contained in mine dewatering water, from point sources identified by PCCC as Pond B Outfall, Pond F&G Outfall, Pond H1 Outfall, Pond H2 Outfall, Pond I Outfall. B, F & G discharge into Ginder Lake which then discharges into Ginder Creek. Ponds I, H1, and H2 discharge into Mud Lake Creek which discharges into Ginder Creek. Additional outfalls include A and A1 ponds which discharge to tributaries to Lake 12 as well as Pit 1 which discharges into Mud Lake wetland and Mud Lake.

On information and belief, PCCC's discharges include the following pollutants: chromium, copper, zinc, lead, iron, lead, manganese, arsenic, dissolved oxygen, oil sheen, pH, total phosphorus, and turbidity. These unpermitted discharges in violation of the CWA have occurred on dates known to you. Some outfalls are stormwater outfalls that discharge when it rains which includes each day since December 1, 2014 that there was a stormwater discharge from the facility, generally including days on which there has been at least 0.1 inches of precipitation. Precipitation data from Auburn, Washington, identifying such days is appended to this Notice of Intent to Sue. Other outfalls discharge on days known to you or every day during the past five years. The violations alleged in this Notice of Intent to Sue will continue until PCCC obtains and comes into compliance with an NPDES permit authorizing such discharges, or until all unpermitted pollutant discharges are permanently ended.

The CWA, 33 U.S.C. § 1311(a), prohibits discharges of pollutants to waters of the United States from point sources except as otherwise in compliance with Section 402, which provides that the Environmental Protection Agency ("EPA") may issue NPDES permits authorizing discharges. 33 U.S.C. §1342. The CWA implements a technology-forcing approach under which increasingly stringent NPDES permit requirements are imposed over time. *See Nat. Res. Def. Council, Inc. v. U.S. EPA*, 859 F.2d 156, 211 (D.C. Cir. 1988). Permits issued under Section 402 must be issued for fixed terms not exceeding five years. 33 U.S.C. § 1342(b)(1)(B). But, under the Administrative Procedure Act (APA) and EPA's regulations, the conditions of an expired permit continue until the effective date of a new permit **only if the permittee timely submits an application for a new permit.** 5 U.S.C. § 558(c); 40 C.F.R. § 122.6; WAC § 173-220-180(5); *Ctr. for Envtl. Law & Policy v. U.S. Fish & Wildlife Serv.*, 228 F. Supp. 3d 1152, 1154-55 (E.D. Wash. 2017).

The NPDES Permit issued by Ecology on January 11, 2008 expired on January 11, 2013. NPDES permits cannot be extended except in compliance with regulatory and permit requirements for a timely and complete application for renewal. PCCC did not submit to Ecology a complete application for renewal. Therefore, the Permit was not extended by operation of 40 C.F.R. § 122.6 or WAC § 173-220-180(5) which require "**timely and sufficient application for the renewal of a permit.**" PCCC again did not submit "timely and sufficient application" for renewal prior to January 11, 2018.

As a result, PCCC has not had a valid NPDES permit for the Facility since January 11, 2013, i.e., for almost seven years. Accordingly, PCCC has been discharging pollutants from point sources at the facility without a permit in violation of Section 301(a) of the CWA every day since January 11, 2013. *See* 33 U.S.C. § 1311(a).

The violations alleged in this Notice of Intent to Sue will continue until PCCC obtains *and* comes into compliance with an NPDES permit authorizing such discharges, or until all point source discharges of pollutants are permanently eliminated without chance of recurrence.

## II. VIOLATIONS OF PERMIT CONDITIONS (alleged in the alternative)

If a court finds that PCCC's NPDES Permit WA0030830 was or remains in effect to authorize PCCC's discharges, Soundkeeper alleges in the alternative that PCCC has violated and continues to violate conditions of the Permit.

### A. EFFLUENT LIMIT VIOLATIONS

To maintain water quality, Condition S1 of the Permit establishes numeric effluent limitations on PCCC's discharges to ensure discharge concentrations meet required standards. Soundkeeper hereby provides notice of its intent to sue PCCC for all numeric effluent limit violations in the past five years, including those listed below.

1. Condition S1.B of the Permit establishes the effluent limitation for the maximum six-month running average phosphorus concentration as 41 μg/L for Outfall B, F, G, $H_1$, $H_2$, and I. PCCC has violated this limitation:

| Date of Violation | Outfall | Six-month average phosphorus concentration (μg/L) |
|---|---|---|
| October 2014 | I | 47 |

2. Condition S1.C of the Permit establishes the effluent limitation for the maximum manganese concentration as 0.050 mg/L for Reichert Well, PCCC Well, Station 12-4, and Pit 2. PCCC has violated this limitation:

| Date of Violation | Station | Manganese concentration (mg/L) |
|---|---|---|
| February 2016 | Pit 2 | 0.0951 |

3. Condition S1.B of the Permit establishes the effluent limitation for the maximum daily copper concentration as 14.5 μg/L for Outfall B, F, G, $H_1$, $H_2$, and I. PCCC has violated this limitation:

| Date of Violation | Outfall | Daily maximum copper concentration (μg/L) |
|---|---|---|
| December 2016 | B | 26 |
| October 2018 | FG | 23 |

|              |    |    |
|--------------|----|----|
| October 2018 | HI | 15 |
| November 2018| FG | 17 |

B.    FAILURE TO INCLUDE AKART IN SWPPP AND IMPLEMENT ON-SITE

Condition S14 of the Permit required PCCC to develop and implement a Stormwater Pollution Prevention Plan ("SWPPP") as specified.  Condition S14.A.1 of the Permit specifies that the SWPPP must indicate the best management practices ("BMPs") necessary to provide all known and reasonable methods of prevention, control, and treatment ("AKART") and ensure that discharges do not cause or contribute to violations of water quality standards. PCCC not only failed to prepare and implement a SWPPP that specified AKART, but has also failed to ensure discharges do not cause or contribute to violations of water quality standards. These violations of Permit Condition S14 and S14.A.1 are ongoing due to the ongoing requirement to implement AKART.

The CWA requires all dischargers comply with effluent limitations that are based on the best available pollution control technology. 33 U.S.C. § 1311.  Washington State's approach to meeting the requirements of the CWA is a statement of legislative intent defined as AKART. Washington State Department of Ecology, *Water Quality Program Permit Writer's Manual* (January 2015).  In issuing or renewing a permit, Ecology is required to do an AKART analysis for the facility's operations and incorporate permit terms that take into account AKART. RCW § 90.48.520.  Ecology's January 24, 2018 letter to PCCC discusses how treatment technology has changed since the Permit for the Facility was developed.  The current technologies at the site are out of date and do not meet AKART standards.

PCCC's failure to select and implement BMPs to satisfy AKART include those noted in numerous inspections by Ecology and the Office of Surface Mining Reclamation and Enforcement ("OSMRE") such as:

- o Poor housekeeping and improper storage of noncoal waste (e.g. oil/ lube containers, scrap metal, plastic pipes, tires, old conveyor belts), documented by inspection reports including that of the March 6, 2019 OSMRE Mine Site Inspection by Flynn Dickinson;

- o Improper storage of oil containers including a possible leak in storage areas, documented by inspection reports including the June 19, 2019 Ecology Stormwater Compliance Inspection Report signed by Monika Kannadaguli on July 30, 2019;

- o Not repairing the berm around the containment area, documented by inspection reports including the June 19, 2019 Ecology Stormwater Compliance Inspection Report signed by Monika Kannadaguli on July 30, 2019;

- o Failure to clean up the oil/fuel storage area, documented by inspection reports including the June 19, 2019 Ecology Stormwater Compliance Inspection Report signed by Monika Kannadaguli on July 30, 2019;

o   Failure to collect all metallic waste and dispose of it properly, documented by inspection reports including the June 19, 2019 Ecology Stormwater Compliance Inspection Report signed by Monika Kannadaguli on July 30, 2019;

o   Failure to designate an area for staging and repair of equipment.  During the March 26, 2019 and the June 19, 2019 inspections, Ecology noted that the same truck with a 3ft by 3ft large puddle of greasy lubricant oil was parked on the service road (See the March 26, 2019 Stormwater Compliance Inspection Report by Monika Kannadaguli on April 22, 2019);

o   Lack of signage at each point of access from public roads that include the names, business address, telephone number, and OSMPRE permit number as required by 30 C.F.R. § 816.11(c), documented by inspection reports including that of the March 6, 2019 OSMRE Mine Site Inspection by Flynn Dickinson;

o   Lack of perimeter markers as required by 30 C.F.R. 816.11(d), documented by inspection reports including that of the March 6, 2019 OSMRE Mine Site Inspection by Flynn Dickinson;

o   Failure to clear the diversion ditch on the north side of Spoilpile 3 South and the clear water diversion ditch adjacent to SE Green River Gorge Rd as required by 30 C.F.R. § 816.43(a)(2), documented by inspection reports including that of the March 6, 2019 OSMRE Mine Site Inspection by Flynn Dickinson;

o   Failure to maintain Pond H2 including failure to clean up fallen trees and trees growing out of its embankment, documented by inspection reports including that of the March 6, 2019 OSMRE Mine Site Inspection by Flynn Dickinson;

o   Failure to repair potholes on roads, including the primary entrance road, road to Pit 1, road to Pit 2, and other areas, documented by inspection reports including that of the March 6, 2019 OSMRE Mine Site Inspection by Flynn Dickinson; and

o   Failure to upgrade wheel wash to meet BMP C106: Wheel Wash in the latest version of Ecology's *Stormwater Management Manual for Western Washington*, Volume II, 30 days prior to resumption of the use of the wheel wash as required by Condition S8.  In the June 19, 2019 Stormwater Compliance Inspection Report, Ecology found that PCCC failed to repair the Truck Washing Area after the March 26, 2019 inspection and oily runoff was still discharging into the Clean Water Diversion Ditch (See the June 19, 2019 Ecology Stormwater Compliance Inspection Report signed by Monika Kannadaguli on July 30, 2019).

These violations constitute a failure to implement BMPs to satisfy AKART, in violation of Permit Condition S14. and S14.A.1, which are ongoing.

C.      FAILURE TO UPDATE SWPPP

Condition S14.A.4 requires PCCC to update the SWPPP whenever there is a change in design, construction, operation, or maintenance, which causes the SWPPP to be less effective in controlling the pollutants.  PCCC has not prepared and implemented a SWPPP that specifies changes the Facility, including, but not limited to the addition of new outfalls and changes in activities onsite including reclamation. (See permit application attached to PCCC's March 19, 2018 letter to Ecology and PCCC's February 6, 2019 letter to Monika Kannadaguli at Ecology in which PCCC stated they are in the process of initiating final reclamation of Pit 1 and will discharge through a new spillway into Mud Lake wetland and Mud Lake Creek). These violations of Permit Condition S14.A.4 are ongoing until PCCC implements a sufficient SWPPP.

D.      FAILURE TO IMPLEMENT BMPS CONSISTENT WITH SWMMWW IN
         SWPPP AND ON-SITE

Condition S14.A.6 of the Permit requires that BMPs in PCCC's a permittee's SWPPP be consistent with the Stormwater Management Manual for Western Washington ("SWMMWW"), which is available on the internet at http://www.ecy.wa.gov/programs/wq/stormwater/manual.html.  The SWPPP must also include the technical basis for the selection of all stormwater BMPs (scientific, technical studies, and/or modeling), which support the performance claims for the BMPs being selected,) as well as an assessment of how the selected BMP will satisfy AKART requirements and the applicable federal technology-based treatment requirements under 40 C.F.R. § 125.3. PCCC has not prepared and implemented a SWPPP that includes the technical bases for all stormwater BMPs or assessed how the selected BMPs will satisfy AKART.

PCCC's failure to select and implement BMPs consistent with the SWMMWW or that will satisfy AKART include those listed above in Section B of this letter. These violations of Condition S14.A.6 of are ongoing.

E.      RECORDING VIOLATIONS

Condition S3.C of the Permit requires that for each measurement or sample taken, PCCC shall record the following information: (1) the date, exact place, method, and time of sampling or measurement; (2) the individual who performed the sampling or measurement; (3) the dates the analyses were performed; (4) the individual who performed the analyses; (5) the analytical techniques or methods used; and (6) the results of all analyses.  PCCC violated this Condition when they failed to record the minimum, maximum, *and* average values on their DMRs for monitoring points B, FG, H1, H2, and I during May 2015, June 2015, July 2015, August 2015, September 2015, April 2016, May 2016, June 2016, July 2016, August 2016, September 2016, June 2017, July 2017, August 2017, September 2017, October 2017, May 2018, June 2018, July 2018, August 2018, September 2018, May 2019, June 2019, July 2019, August 2019, and September 2019.  These violations continue to occur every time that PCCC fails to record this information.

### III.    CONCLUSION

The above-described violations reflect those indicated by the information currently available to Soundkeeper.  These violations are ongoing.  Soundkeeper intends to sue for all violations, including those yet to be uncovered and those committed after the date of this Notice of Intent to Sue.

Under Section 309(d) of the CWA, 33 U.S.C. § 1319(d), each of the above-described violations subjects the violator to a penalty of up to $37,500 per day for each violation that occurred through November 2, 2015, and $54,833 per day for each violation that occurred thereafter.  In addition to civil penalties, Soundkeeper will seek injunctive relief to prevent further violations under Sections 505(a) and (d) of the CWA, 33 U.S.C. § 1365(a) and (d), and such other relief as is permitted by law.  Also, Section 505(d) of the CWA, 33 U.S.C. § 1365(d), permits prevailing parties to recover costs, including attorney's fees.

Soundkeeper believes that this Notice of Intent to Sue sufficiently states grounds for filing suit.  We intend, at the close of the 60-day notice period, or shortly thereafter, to file a citizen suit against PCCC under Section 505 of the CWA, 33 U.S.C. § 1365, for violations.


Sincerely,

Smith & Lowney, PLLC


By: _____
Richard Smith
Meredith Crafton


cc:    Andrew Wheeler, Administrator, U.S. EPA
Chris Hladick, Region 10 Administrator, U.S. EPA
Maia Bellon, Director, Washington Department of Ecology
C. Kombol, Registered Agent, PO Box 100, Black Diamond, WA 98010